OPINION OF THE COURT
 

 Jasen, J.
 

 In this action submitted by the parties upon stipulated facts pursuant to CPLR 3222, the question posed for our consideration is whether full-time paid firemen of the City of Kingston are entitled to share with volunteer firemen the 2% tax levied by sections 553 and 554 of the Insurance Law on fire insurance premiums paid to foreign insurance companies for coverage on properties located within the City of Kingston. To resolve this issue, we are required to examine the specific legislative enactments and charter provisions which relate to the Kingston Fire Department and distribution of the insurance money appropriated to it pursuant to sections 553 and 554 of the Insurance Law.
 

 In 1879, the "Fire Department of the City of Kingston” was established. (L 1879, ch 325, § 1.) This corporation was to consist of "[a]ll such persons as are now or hereafter shall be members of each and every fire company organized, and to be
 
 *192
 
 organized, by the common council of the city of Kingston”. The Legislature also provided that the proceeds of the fire insurance premium tax were to be applied by the Board of Trustees of the Kingston Fire Department "as they shall deem proper, for the use and benefit of said fire department.”
 
 (Id.,
 
 § 5.) At the time of this enactment, fire protection in Kingston was rendered solely by volunteer fire companies. In 1907, however, the City of Kingston established a full-time paid fire department, retaining a number of volunteer fire companies to augment the newly established full-time paid fire department. (See Kingston City Charter, § 107.) These paid firemen were expressly made part of the "Fire Department of the City of Kingston.”
 

 In 1939, the Legislature passed a special law which provided that "[u]pon the disbandment of any of the companies comprising the volunteer fire department of the city of Kingston, there shall be paid by the * * * officer receiving the taxes upon foreign fire insurance premiums on risks located in the city of Kingston to the Exempt Firemen’s Association of the City of Kingston * * * such proportion of such taxes as the number of companies so disbanded bears to the total number of companies comprising such volunteer fire department on the first day of January, nineteen hundred thirty nine * * * [to] be used by such corporation for the care and relief of disabled or indigent volunteer and exempt firemen and their families.” (L 1939, ch 734, § 1.) The Exempt Firemen’s Association of Kingston is an organization primarily composed of those honorably discharged from the ranks of the volunteer fire companies.
 

 The City of Kingston currently has eight active volunteer fire companies with an aggregate membership of about 160 firemen. There are also approximately 75 full-time paid firemen in the Kingston Fire Department. Both paid and volunteer firemen respond to alarms, fight fires and render aid in the Kingston area.
 

 It is undisputed that since 1879 all moneys collected pursuant to sections 553 and 554 of the Insurance Law have been allocated by the Board of Trustees of the Kingston Fire Department solely to the benefit of the volunteer firemen in Kingston. After a demand upon the board of trustees to allocate a proportionate share of these funds to the paid firemen of the City of Kingston was denied, this action was instituted.
 

 
 *193
 
 Trial Term declared the levy should continue to be "exclusively applied for the use and benefit of volunteer firemen and the representative of disbanded volunteer companies and that no portion thereof be used to benefit paid firemen.” Relying primarily on the 1939 act which required the premium tax to be applied to the Exempt Firemen’s Association upon the disbandment of the volunteer fire companies in Kingston (L 1939, ch 734, § 1), Trial Term concluded that the Legislature intended to exclude the paid firemen of Kingston from receiving any portion of the tax under the Insurance Law.
 

 On appeal, a divided Appellate Division affirmed, stating that the "clear import” of the 1939 amendment was that "the Exempt Firemen’s Association would get all the tax proceeds in the event that every volunteer fire company disbanded” and, therefore, "the paid firemen were not entitled to any portion of these proceeds.” We disagree.
 

 Section 553 of the Insurance Law, in pertinent part, provides that "[e]xcept in the cities of New York and Buffalo[
 
 1
 
 ], there shall be paid to the treasurer of the fire department of
 
 every
 
 city, village, fire district, or other organized territory afforded fire protection by
 
 any
 
 fire department * * * by every foreign and alien fire insurance corporation * * * which insure^] property against loss or damage by fire, except foreign mutual fire insurance companies, for the use and benefit of such fire department and the company or companies comprising the same,” a designated percentage of the premiums received for fire insurance upon property situated within the area protected by the fire department (emphasis supplied).
 

 Section 554 of the Insurance Law provides, in somewhat different language, that foreign mutual fire insurance companies shall be similarly taxed and that a portion of this levy is to be paid "to the treasurer of the fire department of each city * * * for the use and benefit of such department”.
 

 Sections 553 and 554 had their origins at a time when fire protection was provided solely by volunteer groups. Funds were generated from taxes collected from insurance companies in order to aid injured and disabled firemen and their families. (See L 1849, ch 178.) The general purpose behind such enactments was to strengthen and stimulate the growth of
 
 *194
 
 organized fire protection throughout the State. (See
 
 Trustees of Exempt Firemen’s Benevolent Fund of City of N. Y. v Roome,
 
 93 NY 313, 322.)
 

 This practice has been carried forward to the present day and is currently authorized by sections 553 and 554 of the Insurance Law. With the advent of the full-time paid fireman, however, these statutes have been construed to apply to volunteer and paid firemen alike. (See, e.g.,
 
 Fire Dept. of City of Rochester v City of Rochester,
 
 23 AD2d 183, affd 16 NY2d 933.) This is understandable when one considers the clear language of sections 553 and 554 of the Insurance Law which creates no preference in favor of volunteer firemen as recipients of these moneys. (See
 
 Wilcox v Schenck,
 
 52 AD2d 349;
 
 Cary v City of Oneida,
 
 158 App Div 773;
 
 Eisinger v Stern,
 
 57 Misc 2d 16.) Thus, the question is whether the 1939 act (L 1939, ch 734, § 1) which allocated to the Exempt Firemen’s Association of the City of Kingston funds formerly payable to the disbanded volunteer companies of Kingston exempts the Board of Trustees of the Kingston Fire Department from the application of the general language of the Insurance Law which requires disbursement of the insurance premium tax to any fire department affording fire protection.
 

 Prior cases dealing with sections 553 and 554 of the Insurance Law did not involve any special legislative enactments which sought to exclude paid firemen as beneficiaries of the tax. (See, e.g.,
 
 Cary v City of Oneida,
 
 158 App Div 773,
 
 supra; Amsterdam Permanent Firemen’s Assn. v City of Amsterdam,
 
 40 Misc 2d 323.) In fact, these cases usually concerned enactments which only changed the official designated to receive the funds and had no effect on distribution to the ultimate beneficiaries. (See, e.g.,
 
 Fire Dept. of City of Rochester v City of Rochester,
 
 23 AD2d 183, affd 16 NY2d 933,
 
 supra.)
 
 Moreover, enactments which expressly included paid firemen as beneficiaries of the tax have been sustained on the theory that, by giving the paid firemen a pro rata share, such enactments caused the "general purposes and uses of the proceeds [to] comply with the intent and meaning of sections 553 and 554 of the Insurance Law”.
 
 (Exempt Volunteer Firemen’s Assn. of Lockport v City of Lockport,
 
 31 AD2d 311, 312.) Thus, in each of the cases construing sections 553 and 554, in the absence of an express legislative enactment precluding the paid firemen of a particular city from sharing in the insurance
 
 *195
 
 premium tax, all firemen in the locality were entitled to share ratably in the funds collected pursuant to the Insurance Law.
 

 Turning to the City of Kingston, we find no special enactment which evinces an intent on the Legislature’s part to exclude the paid firemen of that city from receiving the proceeds of the tax imposed by sections 553 and 554. In this regard, reliance by the courts below on the 1939 act is misplaced. That act only sought to ensure that the Exempt Firemen’s Association would continue to receive a preferential "portion of the tax money in the event any of the volunteer companies in existence in 1939 were subsequently disbanded, thereby enabling the association to carry out its purpose of aiding disabled and indigent volunteer firemen. (See L 1939, ch 734, § 1.) Thus, this act merely allocates to the Exempt Firemen’s Association a portion of the funds that a volunteer fire company would
 
 lawfully
 
 have been entitled to receive had it not disbanded. The 1939 enactment does not expressly preclude disbursement to the paid members of the Kingston Fire Department, nor does it provide that
 
 all
 
 tax moneys be paid over to the volunteers or the Exempt Firemen’s Association. Therefore, this enactment cannot serve to deprive the paid firemen of Kingston of their proportionate share authorized by the Insurance Law to all fire departments affording fire protection.
 
 [2]
 

 In fact, the Legislature specifically has directed that in Kingston the money collected under sections 553 and 554 be applied "for the purposes set forth in * * * the insurance law.” (L 1915, ch 611, § 30; Kingston City Charter, § 106.) These purposes, as mentioned earlier, are to aid and stimulate local fire departments without discriminating between the paid and volunteer members thereof. (See
 
 Fire Dept. of City of Rochester v City of Rochester,
 
 23 AD2d 183, affd 16 NY2d 933,
 
 supra; Cary v City of Oneida,
 
 158 App Div 773,
 
 supra.)
 

 As active members of the "Fire Department of the City of Kingston” (see Kingston City Charter, § 107), the paid firemen have a primary responsibility of providing fire protection to the city. To deprive these firefighters of the benefits afforded them by the Insurance Law without a clear direction to do so from the Legislature is contrary to the avowed purpose of the statute to assist those affording fire protection. Therefore,
 
 all
 
 
 *196
 
 firemen in the City of Kingston should share proportionately in the tax moneys generated by sections 553 and 554 of the Insurance Law. (Accord
 
 Wilcox v Schenck, 52
 
 AD2d 349,
 
 supra; Cary v City of Oneida,
 
 158 App Div 773,
 
 supra.)
 

 Accordingly, the order appealed from should be modified to the extent of granting judgment in favor of the plaintiffs providing that the tax funds presently held and future tax moneys received be paid pursuant to sections 553 and 554 of the Insurance Law for the use and benefit of the Fire Department of the City of Kingston, consisting of the city-paid firemen as well as the present recipients. As so modified, the order should be affirmed.
 

 Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur; Chief Judge Cooke taking no part.
 

 Order modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . In the Cities of New York and Buffalo, the tax on fire insurance premiums paid to foreign insurance companies is imposed pursuant to local law. (NY City Administrative Code, § H46-2.0; Buffalo City Charter, § 490.)
 

 [2]
 

 . We are not called upon in this case to consider any direct application of the provisions of chapter 734. (L 1939, ch 734.)